701 P.2d 1213

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JS–5894.**

**No. 1 CA–JUV 271.**

Court of Appeals of Arizona, Division 1, Department D.

May 7, 1985.

Review Denied June 25, 1985.

Robert K. Corbin, Atty. Gen. by Bonnie Bayham, Asst. Atty. Gen., Phoenix, for appellee.

Law Offices of Glynn W. Gilcrease, Jr. by Glynn W. Gilcrease, Jr., Tempe, Atmore L. Baggot, Phoenix, for appellant.

## OPINION

HAIRE, Judge.

This is an appeal from a trial court decision terminating the parent-child relationship between the appellant-mother and her daughter.

Appellant raises four issues on appeal:

1. Whether the trial court considered all of the available evidence prior to terminating the natural father's relationship with the child.

2. Whether the trial court erroneously determined that appellant could not discharge her parental responsibilities.

3. Whether the alleged use of unrebuttable hearsay at trial by the state constituted prejudicial error.

4. Whether the statute governing termination of the parent-child relationship (A.R.S. § 8–533(B)(3)) contains an unconstitutional burden of proof provision.

Appellant's daughter was born in April of 1983. Shortly thereafter the Department of Economic Security (hereinafter DES) filed a petition alleging that the child was dependent. The child was adjudicated dependent and was placed in the care, custody, and control of the DES in July 1983. The child has never been in the custody of her mother.

The DES filed a petition seeking the termination of appellant's relationship with her child in March of 1984. The trial court after conducting a hearing terminated the parent-child relationship.

The statute governing termination of the parent-child relationship is A.R.S. § 8–533. It states in relevant part:

"B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

\* \* \* \* \* \*

"3. That the parent is unable to discharge the parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

This court stated in *Maricopa County Juvenile Action No. JS–5209 and No. JS–4963*, 143 Ariz. 178, 692 P.2d 1027, 1033 (App.1984):

"[I]n order for a termination to occur under A.R.S. § 8–533(B)(3), three specific findings must occur:

"1. That the parent is unable to discharge the parental responsibilities;

"2. That this inability is the result of a mental illness or a mental deficiency;

"3. That there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

A.R.S. § 8–537(B) establishes that "[t]he court's findings with respect to grounds for termination shall be based upon *clear and convincing* evidence under the rules applicable and adhering to the trial of civil causes." (Emphasis added).

■ Appellant first contends that the court's termination of the relationship between her daughter and the child's natural father was improper. A.R.S. § 8–236(A) states that "[a]ny *aggrieved party* ... may appeal from a final order of the juvenile court to the court of appeals ...." (Emphasis added). "To qualify as an aggrieved party, the judgment must operate to deny the party some personal or property right or to impose a substantial burden on the

party. [Citations omitted]." *Pima County Juvenile Action No. B–9385*, 138 Ariz. 291, 293, 674 P.2d 845, 847 (1983). Appellant is not an "aggrieved party" with respect to the trial court's termination of the parent-child relationship between her daughter and the child's natural father. She therefore has no standing to raise this issue on appeal.

■ Appellant's second argument concerns the proper interpretation of the phrase "unable to discharge the parental responsibilities," contained in A.R.S. § 8–533(B)(3). Appellant asserts that this phrase requires the state to demonstrate that she is not able to discharge *any* of her parental duties. She maintains that despite her mental illness she has established a personal relationship with her child by visiting her and giving her gifts. Appellant contends that the establishment of a personal relationship with one's child is necessarily a parental responsibility envisioned by the statute. She concludes that since she has discharged *a* parental responsibility by establishing this personal relationship with her child, the state cannot terminate that relationship. We disagree.

■ Generally, phrases contained in statutes are to be given their ordinary meaning unless it appears from their context that another meaning is intended. *State v. Wise*, 137 Ariz. 468, 671 P.2d 909 (1983). The phrase should be interpreted so as to give it a fair and sensible meaning, *City of Phoenix v. Superior Court in and for the County of Maricopa*, 139 Ariz. 175, 677 P.2d 1283 (1983). The interpretation urged upon this court by the appellant is not supported by the language of the statute.

■ The statute does not require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge "the parental responsibilities." This court has previously stated that:

"the term 'parental responsibilities' is capable of being understood by persons of ordinary intelligence as referring to

those duties or obligations which a parent has with regard to his child. Although we recognize that individuals may disagree as to exactly what 'responsibilities' a parent owes to a child in a given situation, we believe that the term is susceptible to a sufficiently precise definition." *Maricopa County, JS–5209, JS–4963*, 143 Ariz. 178, 692 P.2d 1027, 1034 (1984).

The term is not intended to encompass any exclusive set of factors but rather to establish a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case before determining the parent's ability to discharge his or her parental responsibilities. Appellant's interpretation is contrary to both the letter and intent of A.R.S. § 8–533 and is thus rejected.

█ The third issue raised by the appellant is whether reversal is required because unrebuttable hearsay testimony was admitted at trial. The statements at issue were made by a DES caseworker concerning events which occurred immediately after the birth of appellant's child.

"[Appellee's Attorney]: What was the presenting problem that you went out to investigate?

"A. We had been contacted by the hospital.

"[Appellant's Attorney]: Your Honor, I object to any hearsay.

"THE COURT: Overruled. You may continue.

"THE WITNESS: We had been contacted by the hospital stating that the mother had arrived there in the morning in labor, and given birth to the baby, that they were aware that she had a previous history of mental illness, that they had handed her the baby.

"She would not let go of the baby for six hours.

"She left the hospital against medical advice, not fully dressed, and they believed she had been placed in the psychiatric annex.

"Their concern was that she wasn't able to care for the baby."

These statements are not hearsay. A hearsay statement is one offered to prove the truth of the matter asserted. Rule 801(c), Rules of Evidence, 17A A.R.S. Here the statements were not offered to prove the truth of the matters asserted, but rather to show the basis for the initiation of the investigation by the DES caseworker. Appellant's hearsay objection was thus properly overruled.

Appellant's final argument concerns the constitutionality of the controlling statute which appellant argues establishes an impermissibly low burden of proof requirement.

In *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court held that "[b]efore a state may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." 455 U.S. at 747–748, 102 S.Ct. at 1391, 71 L.Ed.2d at 603. At the time of the *Santosky* decision, Arizona's termination statute required that the grounds for termination be established by a fair preponderance of the evidence. In light of *Santosky*, Arizona appellate courts declared the "fair preponderance of the evidence" standard contained in the termination statute unconstitutional and required that termination decisions be based upon "clear and convincing evidence." *See Pima County Juvenile Action No. S–919*, 132 Ariz. 377, 646 P.2d 262 (1982); *Maricopa County Juvenile Action No. JS–4130*, 132 Ariz. 486, 647 P.2d 184 (1982). In response to the aforementioned court decisions the Arizona Legislature, in 1983, amended the burden of proof provision of the termination statute (A.R.S. § 8–537(B)) to read: "[t]he court's findings with respect to grounds for termination shall be based upon clear and convincing evidence . . . ."

Appellant urges that notwithstanding the general burden of proof provision of A.R.S. § 8–537(B), A.R.S. § 8–533(B) specifically permits one of the grounds for termination

to be established by less than clear and convincing proof. A.R.S. § 8–533(B)(3) requires in part that there be *"reasonable grounds to believe* that the condition [mental illness, mental deficiency, or chronic abuse of dangerous drugs, controlled substances or alcohol] will continue for a prolonged indeterminate time period." (Emphasis added). Appellant notes that Arizona courts have held that "the phrases probable cause and reasonable grounds to believe refer to the same standard of proof." *Maricopa County Juvenile Action No. J–84984*, 138 Ariz. 282, 284, 674 P.2d 836, 838 (1983); *See also Slade v. City of Phoenix*, 112 Ariz. 298, 541 P.2d 550 (1975). Thus, appellant concludes that the "reasonable grounds to believe" language contained in the statute impermissibly allows the trial judge to apply a probable cause standard when determining whether the mental illness will likely continue for a prolonged indeterminate period of time.

The cardinal rule of statutory construction is to ascertain the legislative intent in enacting the statute. *City of Phoenix v. Superior Court in and for Maricopa County*, 139 Ariz. 175, 677 P.2d 1283 (1984). The provision in question must be interpreted in light of the entire statute and consideration must be given to all of the statute's provisions so as to arrive at the legislative intent manifested by the entire act. *One Hundred Eighteen Members of Blue Sky Mobile Home Owners' Association v. Murdock*, 140 Ariz. 417, 682 P.2d 422 (App.1984). If the statute is susceptible to two interpretations, one of which renders it unconstitutional, we will adopt the interpretation favoring validity. *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 675 P.2d 1371 (App.1983).

The legislature adopted the clear and convincing proof standard in 1983 in response to *Santosky, supra* and its progeny. A.R.S. § 8–537(B) clearly requires that *each* ground for termination must be based upon this burden of proof. In light of the legislative history of this act and the clear intention of the legislature to conform with the constitutionally mandated burden of proof requirement, we do not believe that the phrase "reasonable grounds to believe" contained in A.R.S. § 8–533(B)(3) can now be interpreted as establishing a burden of proof lower than the clear and convincing standard mandated by A.R.S. § 8–537(B). The statute requires a showing by clear and convincing evidence that there are grounds to believe that the mental condition will continue for a prolonged indeterminate period. The inclusion of the word "reasonable" when considered in the overall statutory context does not mandate the conclusion urged by appellant.

In this case the trial judge, after making a number of findings of fact, concluded in his minute entry decision:

"3. The mother [appellant] is unable to discharge her parental responsibilities because of mental illness and that mental illness is a condition which will likely continue for a prolonged indefinite period.

"4. The evidence presented is clear and convincing.

"5. The petition to terminate the parent-child relationship should be granted."

It is apparent that the trial judge appropriately applied the clear and convincing evidence standard in making his finding that appellant's mental illness was likely to continue for a prolonged, indefinite period. The record contains overwhelming evidence to support the judge's determination.

Accordingly, the trial court's decision is affirmed.

MEYERSON, P.J., and GRANT, J., concur.