NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHANNON S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., *Appellees*.

No. 1 CA-JV 17-0252
FILED 1-18-2018

Appeal from the Superior Court in Yavapai County
No. P1300JD201600058
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Peter B. Swann joined.

---

**M O R S E**, Judge:

**¶1**        Shannon S. ("Father") appeals the termination of his parental rights to his daughter based on neglect, substance abuse, and six-months out-of-home placement.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Father and Carli L. ("Mother") are the unwed parents of A.S., who was born substance-exposed in July 2016.[1]  Mother admitted to methamphetamine use during her pregnancy and tested positive for amphetamine and methamphetamine at two prenatal visits and at the time of the child's birth.  Father denied knowing of Mother's drug use during the pregnancy, but acknowledged that Mother had a drug problem and admitted his own prior use of illegal drugs.

**¶3**        The Department of Child Safety ("DCS") received a report of A.S.'s substance-exposed birth and a subsequent report of allegations of heroin and methamphetamine abuse by Mother and Father.  Mother and Father were offered voluntary services through the Substance Exposed Newborn Safe Environment ("SENSE") program for families with newborns exposed to drugs and alcohol.  Because of Mother's and Father's inconsistent engagement in the services offered through SENSE, DCS was unable to establish that A.S. was receiving proper care.  In August 2016, DCS filed a dependency petition.  Father denied the allegations.

**¶4**        Father's history of substance abuse includes use of methamphetamine and marijuana.  In 2014, Father admitted to use of methamphetamine and marijuana and tested positive for methamphetamine when he was arrested for driving under the influence. Father also admitted use of marijuana and tested positive for methamphetamine in 2016.

---

[1] The superior court also terminated Mother's parental rights, but she is not a party to this appeal.

¶5            Father failed to complete the in-home dependency services provided by DCS, and in September 2016, the superior court ordered A.S. into temporary foster care and adopted a case plan of family reunification. The superior court ordered Father to participate in a substance abuse assessment, any necessary treatment services, individual and family counseling, parent skills training, parenting classes, visitation services, and eight to ten random urinalyses per month. DCS arranged for the urinalyses testing to follow Father's supervised visits with A.S. and offered Father transportation to the required testing. Father tested positive for amphetamine and methamphetamine three times in September 2016, and then refused additional court-ordered urinalyses throughout the dependency and severance proceedings.

¶6            In November 2016, after Father failed to appear for a pretrial conference hearing without good cause, the superior court adjudicated A.S. dependent as to Father and found that DCS had made reasonable reunification efforts. By January 2017, Father remained noncompliant with and disengaged from, the court-ordered reunification services, his supervised visits with A.S. had become inconsistent, and services were at risk of termination due to Father's lack of contact and engagement.

¶7            In January 2017, the superior court ordered Father to undergo a neuropsychological evaluation and terminated the plan of family reunification due to his lack of engagement in the services. The neuropsychological evaluation was conducted in March 2017. Father remained noncompliant with the required urinalyses testing and the neuropsychological evaluation results indicated that he was "denying a drug and/or alcohol problem," and would allow Mother to visit A.S. as she wished, even though Father acknowledged that Mother had a drug problem. Father's elevated scores in the evaluation reflected common characteristics associated with substance misuse and defensive responses that may or may not be associated with substance misuse. The evaluation confirmed that there were reasonable grounds to believe that Father's "reported history of heroin and methamphetamine addiction along with possible alcohol misuse" would continue for a prolonged, indeterminate period of time if he did not initiate and complete treatment services. Based on Father's reported history, the evaluation concluded that Father "must be able to demonstrate through random drug testing that he is free and clear of all substances" and "[a]ny negative or diluted test results would strongly suggest that substance abuse treatment be initiated." The evaluation recommended that Father create a life free of substance abuse and learn to properly parent A.S., including protecting A.S. from Mother's substance abuse.

¶8 Throughout March 2017, Father had not yet participated in required parenting classes or qualified for in-home services. Father also attempted to abscond with A.S. following his early termination of a supervised visit with her, resulting in police intervention and the superior court's suspension of Father's visits with A.S. While Father participated in some services, he refused mandated urinalyses and failed to successfully complete reunification services. Because he failed to participate, Father never rectified the issues which caused A.S. to be placed in foster care, even though the services were required to regain custody of A.S.

¶9 After the contested termination hearing in April 2017, the superior court terminated Father's parental rights under Arizona Revised Statue § 8-533, finding that: (1) Father had neglected or failed to protect A.S. from neglect; (2) Father was unable to discharge his parental responsibilities because of his history of chronic abuse of drugs or alcohol and there were reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period; (3) A.S. had been in out-of-home placement for a cumulative total period of six months or longer; and (4) severance was in A.S.'s best interests. Father timely appealed the termination.

## DISCUSSION

### I. Standard of Review

¶10 The fundamental right to parent one's child is not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). The superior court may terminate parental rights if it finds, "by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533," and by a preponderance of the evidence that termination is in the best interests of the child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶ 12 (2000); Ariz. R.P. Juv. Ct. 66(C).

¶11 We review a termination order for an abuse of discretion and will affirm the order unless "there is no reasonable evidence" to support the decision. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). The court must consider those circumstances existing at the time of the termination hearing. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

### II. Substance Abuse

¶12 Father argues the superior court erred in finding clear and convincing evidence in support of severing his parental rights based on his

substance abuse. The superior court may terminate parental rights if the parent has a history of chronic substance abuse, the parent is unable to discharge parental responsibilities due to chronic substance abuse, and reasonable grounds exist to believe that the abuse will continue for a prolonged and indeterminate period. A.R.S. § 8–533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010). As the trier of fact, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, (App. 2004)).

**¶13** The record demonstrates reasonable evidence to support the superior court's finding that Father has a history of chronic substance abuse. A "temporary abstinence from drugs and alcohol does not outweigh [a] significant history of abuse or [a] consistent inability to abstain during th[e] case." *Raymond F.*, 224 Ariz. at 379, ¶ 29. Substance abuse "need not be constant to be considered chronic." *Id*. at 377, ¶ 16. First, although Father denied a substance abuse problem, the evidence reflects his history of substance abuse and methamphetamine use from 2014 through, at least, the three failed tests in 2016. Father's claim of abstinence from methamphetamine after 2015 rings hollow in the face of the three positive test results for the substance in September 2016 and the lack of any documented support for his claimed sobriety. Moreover**,** Father's refusal to comply with court-ordered urinalyses testing services throughout the dependency until severance, despite DCS's attempt to obtain his participation and offer of transportation for testing, provides strong circumstantial evidence that his drug abuse continued. *See id.* at 379, ¶ 27 (including a two-month period during which a parent did not submit to testing as evidence of a substantial history of drug abuse).

**¶14** Second, the record reflects reasonable evidence in support of the superior court's findings that Father could not discharge his parental responsibilities due to his chronic substance abuse. Termination under A.R.S. § 8–533(B)(3) "does not require that the parent be found unable to discharge *any* parental responsibilities," but rather "establish[es] a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case before determining the parent's ability to discharge his or her parental responsibilities." *In re Maricopa Cty. Juvenile Action No. JS–5894*, 145 Ariz. 405, 408–09 (App. 1985). A parent must demonstrate a desire and ability to carry out parental duties beyond procreation alone. *In re Maricopa Cty. Juvenile Action No. JS-501568*, 177 Ariz. 571, 580, (App. 1994). The court must consider how the substance abuse

impedes the parent from adequately parenting. *Raymond F.*, 224 Ariz. at 377-78, ¶ 19.

¶15        As reflected in the record, the neuropsychological evaluation found Father in denial of a "drug and/or alcohol" problem and advised random urinalysis testing; Father "must demonstrate through drug testing that he is clean and sober." A DCS case manager testified about Father's documented history of drug abuse, his negative and diluted drug test result in July 2016, his positive drug test results for amphetamine and methamphetamine in September 2016, and that his refusal to submit to further testing meant that no lab results confirmed further sobriety. The superior court also heard evidence regarding Father's inability to parent A.S. because of his substance abuse history, his failure to acknowledge the impact of substance abuse on his ability to safely parent the child, and his inability to remedy the circumstances that caused A.S. to be in foster care. Father admitted Mother's drug problem but stated that he would allow Mother to visit with A.S. as she desired. Father never demonstrated necessary sobriety nor completed the requisite services to regain custody of A.S., even when he knew such was required for reunification. Despite DCS's efforts to provide appropriate reunification services to Father, he failed to carry out his parental responsibilities and disregarded the court-ordered process to regain custody of A.S.

¶16        Third, the record reflects reasonable evidence to support the superior court's findings that Father's substance abuse will continue for a prolonged and indeterminate period. The court must consider the parent's treatment history; where the parent has not successfully demonstrated and maintained sobriety, the ability to successfully parent is doubtful. *Id*. at 378, ¶ 25. The failure to complete reunification services provides sufficient evidence that drug abuse will continue for a prolonged, indeterminate time. *Id*. Considering Father's substance-abuse history and his refusal to demonstrate necessary sobriety, the superior court had ample grounds to conclude that Father's substance abuse would continue for a prolonged, indeterminate period.

¶17        Finally, the superior court correctly found that DCS made diligent efforts to provide appropriate reunification services to Father, but Father failed to demonstrate necessary sobriety or complete services required for reunification. Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of*

*Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).  Ample evidence supports the superior court's findings.[2]

### III.    Best Interests

**¶18**        Father argues the superior court erred by finding by a preponderance of the evidence that severance was in A.S.'s best interests. When determining whether to terminate parental rights because of a parent's chronic substance abuse, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (citing *Raymond F.*, 224 Ariz. at 379, ¶ 29).  "Whether severance is in the child's best interests is a question of fact for the juvenile court to determine," and we draw all reasonable inferences in favor of the superior court's findings.  *Jesus M.*, 203 Ariz. at 282, ¶ 13.  The court must consider "how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Mary Lou C.*, 207 Ariz. at 50, ¶ 19 (citation omitted).  Such requirement may be met where the child is adoptable or the existing placement is meeting the child's needs.  *Id.*

**¶19**        The superior court found by a preponderance of evidence that severance was in the child's best interests.  The superior court heard testimony that A.S. was adoptable and she would benefit from an environment of "stability and permanency," "free from illicit substances" where her needs would be consistently met, as opposed to "linger[ing] in the system" until a time at which Father might demonstrate his sobriety and stability.  Because of the detriment A.S. would suffer from continued exposure to Father's substance abuse, sufficient evidence in the record supports the superior court's finding that terminating Father's parental rights was in A.S.'s best interests.

---

[2] Because we find that the evidence supports termination of Father's parental rights on the grounds of chronic substance abuse, we need not address the other grounds raised in Father's appeal. *Michael J.*, 196 Ariz. at 251, ¶ 27.

## CONCLUSION

¶20  For the reasons set forth above, we affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA